UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 23-CR-328 (JPO) |
| -v- | |
| HENRY BOONE, | ORDER |
| Defendant. | |

J. PAUL OETKEN, District Judge:

Defendant Henry Boone was apprehended by New York City Police Department ("NYPD") officers on March 17, 2023 and, after a search turned up two loaded semi-automatic pistols, was charged with a single count of possessing a firearm after having been convicted of a felony in violation of Title 18, United States Code, Section 922(g)(1).  (ECF No. 34 ("Opp.") at 6, 10; *see also* ECF No. 20.)  Boone moved to suppress the firearms on April 7, 2024, arguing that law enforcement lacked authority to seize and search him.  (ECF Nos. 27, 28.)  On June 3, 2024, this Court initially denied the motion to suppress in an oral ruling from the bench.  (ECF No. 41 at 20-21.)  On September 25, 2024, the Court granted Boone's request to file supplemental briefing on his motion to suppress.  Following the parties' supplemental briefing (*see* ECF Nos. 52-55), the Court held an evidentiary hearing on April 25, 2025 (ECF No. 70 ("Tr.")).  The parties then filed post-hearing briefs.  (ECF Nos. 72 ("Supp. Mem."), 73 ("Supp. Opp."), 74.)

The parties agree that law enforcement seized the firearms as part of an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and that officers therefore required "reasonable suspicion" that Boone was committing or had committed a crime.  (*See* Supp. Mem. at 13-14, 16-17; Supp. Opp. at 15, 17-18.)  While the standard of proof for reasonable suspicion is considerably lower than that for probable cause, *see United States v. Sokolow*, 490 U.S. 1, 7

(1989), it still "demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing," *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quotation marks omitted); *see also United States v. Hawkins*, 37 F.4th 854, 857 (2d Cir. 2022) (same). Such facts must be available to the seizing officers at the time of the seizure, *see United States v. Freeman*, 735 F.3d 92, 98 (2d Cir. 2013), and reasonableness is measured by an objective standard, *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000). The government bears the burden of proving reasonable suspicion by a preponderance of the evidence. See *United States v. Stewart*, 604 F. Supp. 2d 676, 680 (S.D.N.Y. 2009).

Based on the officers' testimony and body-worn camera (BWC) footage, the Court finds that Boone violated at least one law in their presence—leaving his three dogs unattended in a public place—before the officers seized him inside 1458 Webster Avenue. New York City law requires dogs in public places to be "effectively restrained." N.Y.C. Health Code § 161.05(a). Violations of the leash law are punishable by a fine and imprisonment for up to ten days for a first-time offense. N.Y.C. Crim. Ct. Act § 95. Even if the Court were to accept Boone's argument that the chain linking the dogs to one another was capable of functioning as a leash if Boone were holding it, Boone left the dogs alone outside of the apartment building into which he fled. (Government Exhibit ("GX") 101 at 2:15-2:30.) The Court cannot agree with Defendants' suggestion that the dogs were restrained merely because, after being left alone, they happened by chance to snag their chain on a segment of fencing. (*See* Supp. Mem. at 27; *see also* Tr. at 126:3-5; Government Exhibit ("GX") 101 at 2:28-2:30.)[1] Nor does the fact that violating the

---

[1] Boone also argues that the "gated-in area in front of 1458 was [not] a 'public place' or an '[open or] unfenced area abutting on a public place'" within the meaning of the New York City leash law. (Supp. Mem. at 28 (quoting N.Y.C. Health Code § 161.05(a)).) This account is

leash law is a comparatively minor offense render the officers' seizure invalid.  *Cf. United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015) (violation of a local open-container ordinance); *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir.2009) (suspected civil traffic violation); *United States v. Grady*, 645 F. App'x 1, 2 (2d Cir. 2016) (summary order) (suspected civil parking violation).

Furthermore, even if Boone's abandoning his dogs were insufficient on its own, the constellation of other circumstances was sufficient to generate reasonable suspicion.  Officers provided unrebutted testimony that they approached Boone in a high-crime area, that Boone's body language indicated that he was nervous and looking for a way to flee, and that he eventually fled from officers at "top speed."  (Supp. Opp. at 17-18.)  Officers also received an anonymous tip that Boone possessed firearms and walked around the area with threatening-looking dogs.  (*Id.* at 17.)  Aspects of the tip—Boone's location, identity, and possession of large dogs—were corroborated upon officers' initial approach.  (*Id.* at 17-18.)  Officer Rios credibly testified regarding the tip, its reliability, and his passing on the tip to others including Officer Canale.  (*See ,e.g.*, Tr. 14-15, 24-25, 33, 38.)

While perhaps insufficient alone, these indicia of wrongdoing together justify the officers' reasonable suspicion.  *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of

_____

contradicted by the BWC footage, which shows that at least one gate to the area was open when Boone abandoned the dogs.  (GX 101 at 2:06-2:08.)  Dogs also may not be unleashed in common areas within apartment buildings, or in public housing complexes.  *See Unleashed Dog*, NYC 311, https://portal.311.nyc.gov/article/?kanumber=KA-01051 (last visited July 7, 2025). Moreover, even assuming that Boone committed no formal violation of the leash law, his motion would have to be denied.  Whether or not it was illegal, abandoning one's unrestrained dogs while fleeing from the police is sufficiently suspicious to justify an investigatory detention under *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), and its progeny.

wrongdoing, but it is certainly suggestive of such."); *Hawkins*, 37 F.4th at 858 ("Contextual considerations, such as the fact that the stop occurred in a high crime area, factor into a reasonable-suspicion analysis, and the officers' assessment of an individual's nervous or evasive behavior is pertinent in establishing reasonable suspicion." (cleaned up)).  Stepping back, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125.  At the very least, leaving three large dogs effectively unrestrained in a public place to flee from law enforcement certainly amounts to more than the "mere refusal to cooperate" that is protected by the Fourth Amendment.  *Cf. id.*

Boone's motion to suppress is therefore denied.  The Clerk of Court is directed to close the motions at Docket Numbers 52 and 66.[2]

SO ORDERED.

Dated: July 14, 2025
      New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge

---

[2] The Court previously reserved decision on three evidentiary issues.  The motion to exclude Officer Uribe's disciplinary history is denied.  Having considered that evidence, the Court nevertheless finds his testimony credible in relevant respects.  In addition, Officer Uribe's testimony about the tip constitutes only a small part of the overall constellation of circumstances supporting reasonable suspicion, and thus excluding his testimony would not alter the Court's ultimate determinations.  As to Boone's post-arrest statements and Officer Johnson's BWC footage, the Court does not rely on either in reaching its conclusions here.  Boone's requests to exclude that evidence are therefore denied as moot.